So we'll go forward with the first case, USA v. Sanchez. Good morning, Your Honors, and may it please the Court. Holt Ortiz Alden on behalf of Defendant Appellant Eliel Nunez Sanchez. I would like to reserve two minutes and I will watch my time. Eliel Nunez Sanchez was deported in 2010 following a mass deportation hearing with 13 other men. This hearing marked Mr. Nunez's sole appearance before an IJ, and his individual portion of the hearing lasted just three minutes. During the hearing, numerous due process errors infected the deportation order. Those errors satisfy 1326D and permit collateral review. There are two issues in particular that I would like to discuss today. First, I want to start with the appellate waiver. The government did not establish by clear and convincing evidence that Mr. Nunez's waiver of his appellate rights was considered an intelligence. The government failed to overcome the presumption against waiver and has not met its burden. Second, subsection 1326D1. Under Mendoza-Lopez and Valdivia-Soto, Mr. Nunez's invalid appellate waiver is a significant procedural defect that made direct review unavailable and therefore satisfied subsection D1. With respect to the appellate waiver, the government did not show that Mr. Nunez's waiver of appeal was considered an intelligence. Mr. Nunez was never told what an appeal was or the competing consequences of waiver and appeal and what those might have meant for him. He also was not told that he had a right to counsel on appeal. To make matters worse, Mr. Nunez was deprived of his right to counsel during the hearing and was not given a genuine opportunity to present evidence supporting his request for voluntary departure, both of which were independent due process violations. Under the totality of the circumstances, the government did not establish that Mr. Nunez's appellate waiver was considered or intelligent. With respect to subsection D1, the procedural defects that caused the invalid appellate waiver satisfied D1 because they prevented Mr. Nunez from seeking direct review. Valdivia-Soto held that a procedural error can prevent a noncitizen from taking advantage of an appeal. Mendoza-Lopez, the Supreme Court case that predates subsection D, held the same thing. Mr. Nunez was, again, never told what an appeal was, the types of arguments he could make that he had a right to counsel, or the consequences and finality involved with waiver. Those omissions are similar, if not worse, than the translation error that occurred in Valdivia-Soto. Your client did sign ER 96. Before the hearing, you may be represented at the proceeding at no expense to the government by an attorney or other individual, right? That's correct. And the piece of paper that he signed said, at your hearing, you will be given the opportunity to admit or deny any or all of the allegations. You'll have the opportunity to present evidence at the conclusion of your hearing. You have a right to appeal an adverse decision by the immigration judge, right? That's correct. And your client is entirely fluent in English, yes? That's what the record reflects, yes. And with respect to the information that was provided, Your Honor, as to appeal, the word appeal is a legal term of art that an uncounseled noncitizen would not necessarily understand. The government has an obligation to establish that, not only that a noncitizen has waived their right to appeal, but that that waiver was considered and intelligent. And this court has repeatedly held that in order for a waiver to be considered and intelligent, the noncitizen needs to be advised as to what an appeal is and the potential consequences of waiver. But didn't the IJ explain in general terms, layman's terms, he said if you waive your appeal, the decision will be final. If you don't, it will not be final that day. I mean, that seems to be in a very layman's term explaining the process. You're exactly right, Your Honor. That's what the IJ said, but that's not sufficient. It doesn't explain or explore the consequences, nor does it explain what an appeal is. So, for example, the IJ should have said an appeal is where a higher court decides whether my decision was unfair for any reason and can reject the deportation order. An appeal is free. You have a right to counsel on appeal, and you can choose to give up this right, in which case your case will end, you will be deported, and you will have no opportunity for other judges to review the decision. That would have been sufficient, and the IJ did not say any of those things during the hearing or specifically to Mr. Nunez. So this is applicable to your argument if we accept that it would be applicable to everybody at that hearing, at least for those who we have the transcript for? Yes, Your Honor. I don't recall specifically all of the individual colloquies that occurred and whether the IJ went in-depth as to appellate rights during those colloquies. Based on my recollection, he did not. And so the inadequate advisal regarding the right to appeal would affect all of those other individuals as well, although a number of them were ultimately represented by counsel at a later date. And so that is an additional factor that affected Mr. Nunez in this hearing. Not only was he uncounseled, but the government has not established that he ever waived his right to counsel, let alone that such a waiver was considered and intelligent. The government points to a portion of the transcript that says that in which the IJ, giving a mass advisal, asks whether everyone would like to waive their right to counsel. The transcript states that the interpreter responds, yes. What that means is the interpreter is the only logical explanation for what that means is that the interpreter is saying that everyone has indicated in the courtroom, yes, presumably many of the people in Spanish. Your Honor, that's not the inference that can be made. And this court has addressed transcript issues like this before. In Zarate Martinez, the transcript specifically said that the interpreter said, everyone answers yes. This is something that happens on the record throughout courts. The judge or the interpreter could have said, I see everyone has answered yes. On the other hand, as occurred in this case, this court's opinion in Lopez Vasquez at footnote four, where the interpreter said, yeah, in response to a question, this court noted that the record does not reveal whether Lopez Vasquez joined in the response. The government, again, has a burden to establish by clear and convincing evidence that these fundamental rights have been waived. And so here when- Judge Gould, I have a question for you on a point that may or may not be relevant. So if it's irrelevant, just tell me. This is an illegal reentry case. So there must have been a prior legal court proceeding in which your client was ordered to be deported. And I wondered if the record tells us what he was told about an appeal at that time. Your Honor, if I'm understanding your question correctly, he had a single immigration proceeding. Before the immigration proceeding, he had a criminal conviction. Based on what's in the record, it doesn't appear that there was an appeal as part of that conviction. But this was the only circumstance in which he appeared before the immigration agency in removal proceedings. At this time. There were future proceedings, but in 2010, this was the first time he had appeared in immigration court. Although going to Judge Gould's question, at ER 85 is the record from the Superior Court of Los Angeles, I guess from his plea, where he was advised by counsel. I mean, he was represented by counsel. And it lists actually at ER 85 all of the things that he was told, et cetera, and told, in fact, if you're not a citizen, the offense for which you have been charged will have the consequences of deportation. So he certainly was not a novice in legal proceedings, right? I don't think that's necessarily the case, Your Honor. And I would note that the government has not made any arguments whatsoever that his experience in state criminal court would affect whether they can establish that his appellate waiver in immigration proceedings was considered an intelligent. But he had a single criminal case. We don't know what he was counseled in that case. We don't know what his lawyer told him about his right to appeal or whether he understood what his lawyer had explained to him. And so I don't believe that has any effect, and nor has the government argued that it has any effect on his 2010 removal proceedings. I see that I'm out of time, and I would like to reserve whatever I have left. Thank you. We'll give you one minute for rebuttal, so you can plan on that. We'll now hear from the government. Good morning, and may it please the court. Laura Alexander for the United States. This court should affirm the district court's denial of defendant's motion to dismiss his indictment under Section 1326D because defendant failed to demonstrate and cannot now demonstrate that he exhausted his administrative remedies, that he was deprived of the opportunity for judicial review, and that the entry of his deportation order was fundamentally unfair. I want to first turn to the issue that's really at the heart of this appeal that's been addressed by Counsel Alden in his turn, whether the defendant's waiver of his appellate rights was considered an intelligent. That's really what's important here. Defendant cannot establish that he satisfied 1326D1 or D2, because the record clearly establishes that he waived his right to appeal at his 2010 deportation proceedings, and that this waiver was both considered and intelligent. I want to get now into the facts of the group colloquy and the individual colloquy at the defendant's 2010 deportation proceedings. First, during the group advisement, which proceeded in both English and Spanish, the IJ told the defendant and the other aliens that were present during that group colloquy, at the end of your hearing, I'm going to make a decision. If you disagree with that decision, you have the right to appeal it to a higher court called the Board of Immigration Appeals. Your Honors, I'm looking now at ER 35-36. After he told them about this right to appeal his decision to a different court to essentially get a second bite at the apple, he went on to explain what the consequences of a waiver of that appellate right would be. He stated, and Judge Lee, you pointed this out, if you say no, meaning you don't want to appeal and that you accept the decision, it will be final on that day. If you say yes, meaning that you do want to appeal and that you don't accept the decision, it will not be final on that day. He even went on to tell the aliens, including the defendant, approximately how many days they would have to file their appeal. And then during the individual advisement, defendant affirmatively requested that the individual colloquy proceed in English. And I.J. Rohl stated, I'm going to deny your request for voluntary departure and instead order you deported to Mexico. Do you want to appeal that decision? Defendant answered no. Here, I.J. Rohl did everything that the law requires. And I'm turning to Estrada v. Torres, which said that exactly what I.J. Rohl did here by going through the appellate rights and the group colloquy, and then later during the individual colloquy, having an interaction with the defendant and asking him directly and affirmatively whether he waived that right to appeal. That's sufficient under the law. How do you distinguish Valdez, Soto, if I'm pronouncing that correctly? Yes, Your Honor. Valdez, Soto, the backdrop is important, I believe, in Valdez, Soto. In that case, the defendant at issue had a major neurological disorder. He was evaluated by a psychologist, and that psychologist determined that the defendant had an extremely difficult ability to understand information that he received. He also only spoke Spanish, and he did not read or write in any language. And against that backdrop of the defendant's specific mental condition, there was an affirmative misrepresentation in that case in that the translation errors by the translator that was present at that defendant's deportation proceeding misinterpreted information regarding the defendant's and the other alien's right to counsel. Essentially, the interpreter used a word in Spanish that meant to hire, and it affirmatively misled that defendant into believing that in order to be entitled to counsel, he had to hire counsel or essentially pay for counsel. And unlike this case here where the defendant speaks English, has no neurological disorder or mental condition issues, doesn't ask for clarification of his appellate rights in any way, in Valdez, Soto, he, in his responses, expressed confusion as to what his rights were when it came to his right to counsel and his right to appeal the IJ's decision. And when it came to the misrepresentation by the interpreter, she also said that the defendant would only be entitled to counsel on appeal if he hired that counsel. So the misrepresentation extended not just from the right to counsel, but also a right to counsel on appeal. That's what's really different from this case here. There is no misrepresentation here. No one is leading this defendant astray. And it makes sense under the Ross versus Blake framework that we would create an exception, if you will, or deem 1326 D1 satisfied in these very, very narrow circumstances where a defendant is being affirmatively misled by officials. Counsel, the way I read the transcript, and perhaps the government reads it differently, is the IJ was essentially saying, I'm not giving anybody voluntary departure who has a criminal record. Is that a fair reading of what IJ Rule or Ruleese said? It's not the government's reading, Your Honor. The government believes that IJ Rule was essentially expressing an internal policy, if you will. It wasn't IJ Rule stating that he would not consider any other factors present in every alien's individual colloquy in terms of mitigating circumstances. Here, IJ Rule received information that the defendant first came to the United States in 1992 as a child. He knew that the defendant had a U.S. citizen fiancee at a 2-year-old that was also a U.S. citizen. So he received information and considered that information when it came to the defendant's mitigating circumstances. But it's not contrary to the law for an immigration judge to have an internal policy when it comes to certain criminal offenses and the exercise of their discretion with respect to granting. What about where the judge says at ER 68, I'm not going to give you voluntary departure, sir, because you can't emigrate or immigrate because of your drug conviction. So it wouldn't do you any good. Is that a correct statement of the law by the IJ? It is, Your Honor. A controlled substance offense subject to a few specific exceptions does bar an alien from lawfully immigrating into the United States under the INA. However, here, IJ Rule is essentially expressing that in his discretion, he believes that if he were to even grant voluntary departure, it would essentially be futile. He wouldn't receive any benefit from it. And again, the government reads IJ Rule's transcript here as showing not that he disregarded other factors, but this was simply one of those factors that he considered. His criminal background, the fact that he had a conviction just four years prior to the 2010 deportation proceedings for possessing methamphetamine with a firearm. So, yes, this, in the government's view, is just a proper exercise of judge rule's discretion when it came to pre-conclusion voluntary departure. You briefly addressed this, but however you reckon, there's a little bit of tension between the Supreme Court's Palomar-Santiago decision and our more recent decisions, Valdivia-Soto and Portillo-Gonzalez. So, what you're advocating is that our decision should be interpreted as creating a narrow exception just for misrepresentation by the government or the IJ? Yes, Your Honor. Palomar-Santiago, Portillo-Gonzalez, and Valdivia-Soto all reference the Ross v. Blake framework. Ross v. Blake essentially found that the PLRA, which this court found in Valdivia-Soto, is very similar to the 1326d context, that it's a statutory exhaustion regime and it's mandatory. But there's one textual exception to that mandatory exhaustion regime, and that textual exception is that those administrative remedies in 1326d-1 actually be available. And Ross v. Blake enunciated three special circumstances where those remedies wouldn't be available. One of those that is the most relevant in the 1326d context is that administrative officials, or here, immigration officials, are not affirmatively thwarting a defendant's attempt to benefit from those administrative remedies through machination, through intimidation, or through misrepresentation. That's the narrow circumstance here that Valdivia-Soto recognized. That translation error affirmatively misled the defendant in that case. And that's simply not present here on these facts. I see that I'm low on time, so if Your Honors have no further questions, the government respectfully requests that this court affirm the district court's order. Thank you. You're out of time. That clock is the amount of time you've gone off. Apologies, Your Honor. Well, that's okay. I was going to give you an extra minute because we're giving an extra minute to the appellate, too. Okay, so thank you.  Now we'll hear one minute of rebuttal. And I apologize, we'll have to keep the rebuttal to that one minute because of our schedule today. Thank you, Your Honor. I'd like to discuss two things very briefly. First, with respect to voluntary departure, the government in its briefing did not argue one thing in support of the IJ's decision, that Mr. Nunez was statutorily ineligible for post-conclusion voluntary departure. Our argument is with respect to pre-conclusion voluntary departure. Now that argument argues something else. And what it argues today is wrong under this court's recent Zamorano v. Garland decision, which is addressed in the briefing. With respect to the Ross v. Blake case, in this context where an IJ is responsible for advising someone, an affirmative representation is no different from an omission. And this court, en banc, has held in the PRLA context that failure to advise or omissions can prevent a prisoner from seeking further review. The case is Albino v. Baca, 747 F. 3rd, 1162, 9th Circuit, 2014, and it's since been recited post-Ross v. Blake for that very reason. Thank you, counsel. I want to say I appreciate very much the flexibility of counsel on both sides to appear remotely because of the tragic fires in Los Angeles area. That's very helpful. You've both made excellent arguments, and the court will now submit the Sanchez case, and you'll hear from us in due course. Here, Your Honor. Thank you.
judges: GOULD, BENNETT, LEE